## J. R. BRANTLEY AND ANOTHER v. HENRY E. THOMAS.

If there be no express warranty by the seller, and no fraud on his part, the buyer, who examines the article for himself, must abide by all losses arising from latent defects, equally unknown to both parties.

But this rule only applies to cases, where the article sold was equally open to the inspection and examination of both parties.

Where sales are made by sample, there is an implied warranty, that the goods sold shall correspond with the sample.

And where goods are ordered by one dealer, and sent by another, there is an implied warranty, that the goods sent shall correspond with the order; or, if sent upon a general engagement to forward goods, that they are valuable, and merchantable in the market where they are to be sold.

The rule of *caveat emptor*, is founded upon the idea, that the purchaser sees what he buys; and the tendency of the modern decisions, is, to imply a warranty of quality, in all cases, where the purchaser has no opportunity to exercise his own judgment, but relies on the judgment of the party with whom he deals.

Where there is either an express or implied warranty, the vendee of goods may show a partial failure of consideration, in defence to an action against him for the purchase money, without returning the goods.

If the vendee would rescind the sale, and recover back the purchase money, on the ground that the goods delivered did not conform to the warranty, he must, within a reasonable time, return or offer to return the goods, unless they are wholly worthless.

In England, and those States of our Union, where a party cannot plead a partial failure of consideration in an action at law, cases will be found which deny the doctrine here recognized; but they have no application in this State, where a defendant is expressly authorized to plead a partial failure of consideration; and, as has been decided, even under a plea of total failure of consideration, he may show a partial failure.

APPEAL from Gonzales.   Tried below before the Hon. Fielding Jones.

Suit by appellee, upon a promissory note for $323.31.   Appellants pleaded a total failure of the consideration, and alleged, that the note sued upon was given in payment for ten boxes of tobacco, sold to them by appellee, by his agent; that said tobacco was sent, by appellee, from New York, upon the order of appellants, and was entirely worthlesss, rotten, and unfit to use or sell; that the same was of a different quality from that contracted for, by the order given by them; that the agent represented said tobacco as a superior article, and presented to them a sample of tobacco, which was entirely different from that sent, whereby they were induced to make said purchase; and that the note was given long before the delivery of the tobacco.

Upon the trial, the court instructed the jury, "In this case "you should find for the plaintiff, the amount of the note, un- "less you believe that the consideration of the note was certain "tobacco, which was entirely worthless. But if you believe "that the tobacco was not entirely worthless, then, to entitle

"the defendant to maintain his defence, of failure of considera-
"tion, you must be satisfied, that the defendant, in a reasonable
"time after he discovered the cheat, offered to return it."

*H. S. Parker*, for appellants.   The tobacco was sold to de-
fendants by sample, and hence there was an implied warranty,
that it should be as good as the sample.   Tobacco is even dif-
ferent from cotton; it is in boxes, and cannot be examined;
and hence, the law of warranty should be strictly applied to it,
when sold by sample.   This was ordered for a special purpose,
as chewing tobacco, and was to correspond with the sample
exhibited.   As to the implied warranty, see Parsons on Mercan-
tile Law, p. 57, note; Boorman v. Johnston, 12 Wend. Rep.
566; Jackson v. Roberts, 11 Id. 422; Gallagher v. Waring, 9
Id. 20; Story on Sales, § 376.   The defendants were not com-
pelled to return the articles; in fact, the tobacco, being in
boxes, defendants were compelled to open it before they could
examine it, and it could not be returned in the condition in
which it was received.   (Warring v. Mason, 18 Wend. Rep.
425.)

Even if it is considered that there was no warranty, de-
fendants would not be compelled to return that which was
worthless.   (Story on Sales, § 427, and note 2, page 448.)

There was at least a partial, if not a total failure of con-
sideration; and defendants had a right to plead the same, in
off-set and re-convention.   (Parsons on Mercantile Law, note 2,
page 37, and cases there cited.)

From this view of the case, we argue, that the charge of the
court did not present the case to the jury in its proper light,
and was not the law of the case, under the pleadings and evi-
dence; and it must have misled the jury in this, that it in-
structed them to find for the plaintiff, unless every box was
worthless, or had been returned to plaintiffs.

BELL, J.   There are no questions, about which the decisions
of the courts of this country and of England, have been more

various, than they have been concerning those questions which so often arise out of the doctrine of implied warranties. And even upon the question of warranty itself, the decisions are extremely contradictory. In cases of express warranty, few difficulties are encountered, and the rules of law are sufficiently certain and fixed. The difficulties, of which the books are full, arise in cases where the questions are, whether there is an implied warranty, or not, and what are the respective rights and duties of vendors and vendees, in such cases. The old rule, and the general rule, as stated in the books, is, that a fair price implies a warranty of title, but that, as respects the quality of the article sold, the seller is not bound to answer. This rule, however, has received certain modifications, which have been generally recognized by the courts. One of these modifications, for example, is, that where goods are sold by sample, there is an implied warranty, that the bulk of the goods delivered, shall correspond with the sample exhibited. This general subject is fully discussed in 2 Kent's Com., between pages 473 and 481, and in the notes to the text: also in Story on Sales, and Parsons on Contracts.

It would be an unnecessary labor, and an improper consumption of time, in the midst of the mass of business which now presses upon the court, to review all the cases which are cited, and partially discussed, by the authors above named. We can merely state the conclusions of those learned writers, and endeavor, from a few general considerations, to ascertain the law applicable to the present case. In stating the general rule, Chancellor Kent says, that "the common law very reason-"ably requires the purchaser to attend, when he makes his "contract, to those qualities of the article he buys, which are "supposed to be within the reach of his observation and judg-"ment, which it is equally his interest and his duty to exert." He then quotes the case of Seixas v. Woods, 2 Caines' Rep. 48, and the case of Swett v. Colgate, 20 Johns. Rep. 196, where the general rule was enunciated, "that if there was no express "warranty by the seller, and no fraud on his part, the buyer,

"who examines the article himself, must abide by all losses "arising from latent defects, equally unknown to both parties." The learned author adds, "that the rule fitly applies to the "case, where the article was equally open to the inspection "and examination of both parties, and the purchaser relies on "his own information and judgment, without requiring any war- "ranty of the quality. But," he adds, "the rule does not "reasonably apply to those cases, where the purchaser has "ordered goods of a certain character, and relies on the judg- "ment of the seller; or where goods of a certain described "quality are offered for sale, and when delivered, they do not "answer the description directed, or given in the contract. "They are not the articles which the vendee agreed to pur- "chase; and there is an implied warranty, that the article shall "answer the character called for, or be of the quality described, "and saleable in the market, and under that denomination."

Without pursuing this branch of the subject further, we may assume, as a correct rule, deducible from the authorities, that where sales are made by sample, there is an implied warranty, that the goods delivered shall correspond with the sample. And where goods are ordered by one dealer, and sent by an- other, there is an implied warranty, that the goods sent shall correspond to the order, or that they are merchantable, and suited to the market where they are to be sold.

The rule of *caveat emptor* is founded in the idea, that the purchaser sees what he buys, and exercises his own judgment; and the strong tendency of the modern decisions, is, to imply a warranty of quality, in all cases where the purchaser has no opportunity to exercise his own judgment, but relies on the judgment of the party with whom he deals. If goods are sent, upon order, by a New York merchant, to a Texas merchant, the law will imply a warranty, that the goods sent are such as were ordered; or, if goods are sent by a New York merchant, to a Texas merchant, without a special order, but upon a gene- ral engagement to forward goods, the law will imply a war- ranty, that all goods sent are valuable and merchantable.

We conclude, then, that in this case, whether the sale was by sample or not, there was an implied warranty of the tobacco.

The next question is, whether or not, the appellants had the right to plead and prove a partial failure of consideration, without an offer to return the tobacco. The plea, in this case, was a plea of total failure of consideration. But under this plea, the defendants might show a partial failure of consideration, as has been often decided by this court.

In England, a party is not permitted to show a partial failure of consideration, in a suit on a bill of exchange, though he may show a total failure of the consideration. (2 Kent's Com. 473, and cases cited in the note.) The same rule has obtained in some of the States of this Union, and is yet adhered to by the courts; though, in most of the States, statutory regulations exist, authorizing parties to plead failure of consideration, either in whole or in part.

In England, and in those States of our Union where a party is not permitted to plead a partial failure of consideration, in an action on a note, or bill of exchange, many cases will be found, which assert this doctrine; but the principle on which these decisions are based, has no application in this State, where our statute expressly authorizes defendants to plead a partial failure of consideration. (Hart. Dig. Art. 2527.)

We believe the rule to be established, by the weight of modern authority, that in all cases, where there is either an express or an implied warranty, the vendee of goods may show a partial failure of consideration, in defence of an action against him for the purchase money, without returning the goods. (See 1 Parsons on Cont. 473, 474, and the cases there cited; 2 Kent's Com. 474, and the cases cited in the note.)

If the vendee of goods, in cases where there is either an express or an implied warranty, would rescind the sale, and recover back the purchase money, he must, within a reasonable time, return the goods, or offer to return them, unless indeed, the goods are wholly worthless; in which latter case, the ven-

dee is not obliged to return them, or to offer to return them, before he can sue to recover back the price, or defend against an action for the price. (2 Kent's Com. 480, and cases cited in the note; Story on Cont. p. 931, § 844 a; Christy v. Cummins, 3 McLean's Rep. 386.)

We conclude, that there was error in the charge of the court, for which the judgment must be reversed, and the cause remanded for another trial, which is accordingly done.

Reversed and remanded.